IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

IN RE: WHITEHALL PHARMACY LLC, DEBTOR         CASE NO.: 4:25-bk-12406
                                              CHAPTER 11

## ORDER REGARDING SANCTIONS

Before the court is its *Order to Appear and Show Cause Why Sanctions Should Not Issue* ("OSC") entered on August 18, 2025, at ECF No. 89 directing Charles D. Davidson, Sr. ("Davidson"), Deven Harvison ("Harvison"), and the Davidson Law Firm (collectively, "Counsel") to appear and show cause why this court should not find one or more violations of Rule 9011 and Local Rule 2090-2[1] with sanctions as provided therein. Counsel, on August 28, 2025, filed their *Response to Order to Show Cause Why Sanctions Should Not Issue* ("Response") at ECF No. 98. By agreement, Counsel rested on their Response. Thereafter, the court took the matter under advisement. For the reasons stated herein, the OSC is withdrawn and dismissed; no sanctions are imposed. This order concludes this matter and shall be transmitted to the Arkansas Office of Professional Conduct to supplement Counsel's election to self-report; this transmission is not intended as an independent referral.

### I. BACKGROUND

The debtor, Whitehall Pharmacy LLC ("Whitehall"), filed a Chapter 11 case on July 21, 2025, represented by Davidson and Harvison, both attorneys at the Davidson Law Firm. The commencement of a Chapter 11 case is often attended by several motions seeking first day orders from the court; these typically concern ongoing operations, such as utilities and use of cash collateral. Whitehall adhered to this pattern.

---

[1] Federal Rule of Bankruptcy Procedure 9011; Local Rule 2090-2 of the United States Bankruptcy Courts for the Eastern and Western Districts of Arkansas.

Atypically, however, Whitehall also sought permission from the court to pay *pre-petition* claims of various creditors or vendors deemed critical to Whitehall's ongoing business and potential reorganization. Specifically, Whitehall filed its *Amended Motion for Authority to Pay Critical Vendors* ("Amended Motion") at ECF No. 24, which states in pertinent part:

> COMES NOW Whitehall Pharmacy LLC, Debtor and Debtor-in-Possession (the "Debtor"), by and through its counsel, and for its Amended Motion for Authority to Pay Critical Vendors (the "Motion"), respectfully states as follows:
>
> ….
>
> 15. Courts in this District and others have routinely authorized the payment of critical vendor claims under similar circumstances. See, e.g., *In re Berry Good, LLC*, No. 4:20-bk-12345 (Bankr. E.D. Ark. May 2020) (authorizing payment of perishable produce suppliers critical to debtor's restaurant operations).
>
> ….
>
> WHEREFORE, the Debtor respectfully requests that this Court enter an order: (1) Authorizing, but not directing, the Debtor to pay prepetition obligations of the Critical Vendors up to a cap of $1,904,869.56; (2) Authorizing the Debtor to condition such payments on the continued provision of goods and services on customary trade terms; and (3) Granting such other and further relief as is just and proper. Absent the relief requested, Debtor will suffer immediate and irreparable harm due to potential supply chain disruption, loss of access to pharmaceuticals, and harm to patient care and estate value.
>
> Respectfully Submitted,
>
> DAVIDSON LAW FIRM
>
> /s/ Charles Darwin Davidson, Sr.
> Charles Darwin Davidson, Sr. ABN73026
> -and-
> Deven K. Harvison ABN2017263
> 724 Garland Street
> Little Rock, Arkansas 72201
> 501-374-9977
> skipd@dlf-ar.com
> deven.harvison@dlf-ar.com

(*Amended Motion*, at 1, 4, and 6, ECF No. 24). The *Berry Good* case and parenthetical comprise the only caselaw and substantive authority cited in the Amended Motion supporting the requested relief.

The Hon. Phyllis M. Jones entered her *Interim Order Authorizing the Debtor to Pay Prepetition Claims of Critical Vendors* ("Interim Order") at ECF No. 28 granting the requested relief on a temporary basis and setting the Amended Motion for hearing on August 14, 2025. Thereafter, Judge Jones recused, which resulted in this court presiding at the August 14 hearing; both Davidson and Harvison appeared on Whitehall's behalf. By its *Order* entered on August 14, 2025, at ECF No. 84, the court terminated without prejudice the Interim Order and reserved the Amended Motion for hearing by subsequent notice.

At the August 14 hearing, this court raised perceived infirmities respecting paragraph 15 of the Amended Motion; specifically, the factual allegations and legal assertions contained therein could be misleading, false, or incorrect. Critical vendor motions are not routinely filed or granted in the Eastern District of Arkansas. The case referenced in paragraph 15 does not exist. The case number reflects an actual Chapter 13 bankruptcy case in the Eastern District of Arkansas; the case name, *In re Berry Good, LLC*, does not. The order referenced therein does not exist or stand for the proposition suggested. At the August 14 hearing, Counsel admitted as much and intimated that artificial intelligence ("AI") may have been used in generating paragraph 15.

## II. RESPONSE

Accordingly, the court issued its OSC pursuant to Rule 9011 and Local Rule 2090-2. In their Response, Counsel wisely elected four courses of action. First, while outlining their process by way of explanation (including the use of AI), Davidson and Harvison took and accepted ultimate responsibility for the phantom case citation and authority; they pled negligence and

3

systemic lapses in lieu of an intent to mislead the court or gain an adversarial advantage. Second, Counsel self-imposed several internal safeguards. Specifically,

> 36. Debtor's Counsel remains committed to maintaining the highest professional standards of accuracy, candor, and integrity in all filings with the Court. To that end, Debtor's Counsel has implemented immediate safeguard[s], including, but not limited to:
> a) AI will no longer be used in the preparation of motions, pleadings, or other documents filed with the Court;
> b) Any remaining use of AI will be confined strictly to administrative tasks, and only with attorney oversight;
> c) All counsel at DLF must enroll in and attend additional CLE at a minimum of three (3) hours regarding AI's use in the legal industry;
> d) Mandatory attorney review of all drafts prior to filing has been reinforced;
> e) Every case citation included in any filing must now be verified directly in Westlaw or Lexis before a pleading is finalized and failure to adhere to this policy, failure to do so will result in appropriate disciplinary action.

(*Response*, at 10 and 11, ECF. No. 98). Third, Counsel volunteered that it would not bill Whitehall for any time related to the Amended Motion, OSC, or Response. Fourth, Counsel self-reported this matter by transmitting to the Arkansas Office of Professional Conduct the OSC and their Response.

### III. ANALYSIS

Bankruptcy "first day orders" are reorganization specific. After filing, the automatic stay takes effect affording the debtor immediate refuge from their creditors while it attempts to reorganize. Harmoniously, the Bankruptcy Code both fosters and circumscribes the debtor's ability to continue its operations without some court, creditor, or United States Trustee ("UST") scrutiny. The exigencies of the situation, however, often require that some matters, such as use of cash collateral, must be addressed almost immediately upon filing. It is typical for the debtor to file a variety of first day motions with limited notice to other parties. The court, recognizing the

4

exigencies of the circumstances,[2] generally affords first day requests favorable treatment. In doing so, the court relies on the representations contained in the motions, knows that any resulting orders are temporary, and takes comfort that the court, creditors, and UST can suss out the authority and facts to determine whether the relief accorded should extend beyond the initial interim. Paragraph 15 of the Amended Motion fits that rubric.

> 15. Courts in this District and others have routinely authorized the payment of critical vendor claims under similar circumstances. See, e.g., *In re Berry Good, LLC*, No. 4:20-bk-12345 (Bankr. E.D. Ark. May 2020) (authorizing payment of perishable produce suppliers critical to debtor's restaurant operations).

(*Amended Motion*, at 4). The *Berry Good* case and parenthetical comprise the only persuasive authority cited in the Amended Motion supporting the requested relief.

Unfortunately, just about everything in paragraph 15 is incorrect. Critical vendor motions are not routinely filed or granted in the Eastern District of Arkansas. The case referenced in paragraph 15 does not exist. The case number reflects an actual Chapter 13 bankruptcy case in the Eastern District of Arkansas; the case name, *In re Berry Good, LLC*, does not. The order referenced therein does not exist or stand for the proposition suggested and is, as confirmed in the Response, AI generated.

The idea behind a critical vendor motion is that the debtor seeks to favor certain vendors by elevating and paying their *pre-petition* debt because their product or services are "critical." This treatment is inconsistent with the Bankruptcy Code and usurps the protections afforded by disclosure, classification, acceptable discrimination, and ratable distribution contemplated by a full plan confirmation process. There are jurisdictions both rejecting and accepting critical vendor efforts.

---

[2] *See* 11 U.S.C. § 363(c)(3) (stating that any hearing on immediate use of cash collateral "shall be scheduled in accordance with the needs of the debtor").

The issue is not conclusive in the Eighth Circuit, though at least four courts within the circuit have published opinions referencing critical vendor motions with approbation. *See R. Ray Fulmer, II v. Fifth Third Equip. Fin. Co.* (*In re Veg Liquidation, Inc.*), 583 B.R. 203 (B.A.P. 8th Cir. 2018); *In re Wehrenberg, Inc.*, 260 B.R. 468 (Bankr. E.D. Mo. 2001); *In re Payless Cashways, Inc.*, 268 B.R. 543 (Bankr. W.D. Mo. 2001); *In re O & S Trucking, Inc.*, No. 12-61003, 2012 WL 2803738 (Bankr. W.D. Mo. June 29, 2012); and *In re BDC Grp., Inc.*, No. 23-00484, 2023 WL 4111476 (Bankr. N.D. Iowa June 21, 2023). But, insofar as this court can determine, critical vendor motions and orders approving same are not routine in the Eastern or Western Districts of Arkansas. No current judge, current law clerk, or five career law clerks past and present polled can recall one ever being addressed or approved in these two districts.

Whether an Eastern District of Arkansas bankruptcy court should approve a critical vendor motion is certainly subject to dispute. This court inclines toward the belief that there is statutory and case law authority that may justify same. On that premise, argument for the relief requested is fair; a categorical statement that it is routine in this district is not. Alone, that representation only invites curiosity which diminishes the argument. That representation, however, coupled to a specific but non-existent case in support, invites scrutiny and consequences.

When examined, paragraph 15 is the result of a flawed AI search that suggested an incorrect generalization falsely supported by a specific but non-existent case. Under any scenario, a suspect argument buttressed with a case from whole cloth violates the expressed and tacit norms governing the practice of law as it intersects with the courts. Simply, you cannot make stuff up to convince a court to do something.

In simpler times, that would end the inquiry with draconian consequences. The times, however, are no longer simple; thus, the inquiry does not end here.

AI interposes additional considerations that defy easy categorization or scrutiny when examining the traditional norms of practice and advocacy. Threshold, two fields of inquiry present in any AI debate. The first is whether exposition artificially generated by a computer is acceptable in what has contextually been a forum for human critical analysis, thought, and advocacy. That is not the instance here. Rather, it is the second; that is, when AI sacrifices accuracy to satisfy the consumer and that inaccuracy is advocated before the court.

Thus, the inquiry becomes (1) are the expressed norms violated and (2) does an artificial component alter the discourse and impact the consequences. The answer to the first is easy. As suggested above, the use of a phantom case clearly violates the traditional and expressed norms of advocacy and practice before any court. It would be difficult to argue otherwise.

First, it is a violation of Rule 9011, which provides in pertinent part:

> (b) Representations to the Court. By presenting to the court a petition, pleading, written motion, or other document-whether by signing, filing, submitting, or later advocating it-an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;

Fed. R. Bankr. P. 9011.

Second, phantom case authority violates Local Rule 2090-2 of the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas. With respect to Attorney Discipline and Disbarment, the rule provides:

> The standard of professional conduct for attorneys practicing in this Court is governed by the Arkansas Rules of Professional Conduct and Federal Rule of Bankruptcy Procedure 9011. The Court will refer violations of the Arkansas Rules of Professional Conduct to the Arkansas Committee on Professional Conduct for such actions and sanctions as the Committee deems appropriate. Additionally, the Court shall have such authority and discretion as are permitted by and under the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, statutory and common law, and the express and inherent powers conferred upon them. Sanctions may include suspension or disbarment from the practice before this Court.

As incorporated, the Arkansas Rules of Professional Conduct weigh in and provide in pertinent part:

> Rule 3.3. Candor Toward the Tribunal.
> (a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal; or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

Further,

> Rule 8.4. Misconduct.
> It is professional misconduct for a lawyer to:
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice[.]

Non-existent authority is grounds for sanction and referral under Rule 9011, our local rules, the court's inherent powers, and the Arkansas Rules of Professional Conduct as incorporated.

So, the answer to the first question posed above is a resounding yes. The only acceptable conclusion is that citing a made-up case is a false representation to the court that violates the expressed norms of practice, is actionable, and should bear consequences. The answer, however, to the second question—whether an artificial component alters the calculus—is more difficult.

Here, our traditional norms are challenged. In context, the traditional advocacy process begins with black letter law in the form of statutes, codes, and regulations. Then, there are judicial opinions and orders interpreting black letter law in the context of justiciable issues based on discrete facts. Lawyers cite cases for their binding or persuasive authority and have done so ever since someone started committing judicial decisions to stone, parchment, or paper. The ability to find and cite cases has evolved over time from laborious research in courthouses, to compendiums, indices, digests, reporters, advance sheets, key numbers, and now the internet.

The internet changed this dynamic in two ways. First, it streamlined, refined, and improved the research process. Users could select fields, topics, and key numbers to find and locate cases. Eventually, more specific tools, such as key words or phrases, enhanced the process. Second, and more pertinent to the present issue, AI is creating a process where instead of just finding authority, the computer also does the supplicant's thinking and analysis for them. The first innovation continues to evolve; the second is new, likewise continues to evolve, but constitutes an *entirely new dimension*, rather than a continuum, in legal practice. Finding has evolved into finding and thinking.

Travel back to research, the first changed dynamic. From stone to the internet, how lawyers found and used case law took many forms. Some would carefully read every case they found; some would read every page of select cases they thought pertinent; others might read the digest entry and then read only that section of the case; others might read only the digest entry; others barely read anything at all and cited anything that looked like it might support their position. Each was a personal decision by the lawyer for which he or she is accountable under the traditional norms of practice both officially—through codes of conduct and Rule 9011—and unofficially per the norms and expectations of courts.

AI compresses this historical dynamic. The research engine is now the search and thinking engine. AI finds case law and tells the subscriber that it supports their position. All the personalities described above—and known oh-so-well to us all—have become one.

Except, however, AI is flawed. In its infancy—albeit one that may be in college soon—it is immature and does not always provide accurate information or correct analysis; it may even make things up.

A tool that potentially supplants your advocacy by doing the finding and thinking for you is enticing.[3] But in the end, it is only a tool. Despite our near total and unfortunate faith in the internet, it does not relieve the attorney of his or her responsibility to make sure that the information and analysis are correct.

Reliance on AI can, however, mitigate intent. Here, Counsel is responsible for their negligence and misplaced reliance on AI, but there is no indication—and this court does not believe—that they purposely misled the court. They did not decide to make up a case. Misplaced reliance or negligence does not always equal intentional misrepresentation.

To be clear, the mitigation is not of their responsibility; that remains choate. A lawyer should know the authority they are citing. Rather, misplaced reliance or negligence can mitigate consequences to the extent the proof or self-evident facts demonstrate a lack of intent to actively mislead the court.

This is not an abjuration of the lawyer's responsibility to the profession and to the courts. Rather, this is a recognition that negligence or misplaced reliance on a new technology should not be viewed through the same exacting prism as an intentional effort to mislead a court or gain an adversarial advantage by purposely creating and citing nonexistent authority. If two things are not the same, consequences should not be the same.

A new technology affords only a limited window where this defense is available; time will alert the bar to AI's limitations and how the bench and bar should respond. Adversaries and the courts are entitled to rely on the integrity of advocacy; if AI displaces the mule, lawyers retain the reins. Here, Counsel acknowledges their negligence in that regard. In these circumstances, grace presents in determining consequences.

---

[3] Enticing until it supplants you entirely.

Rule 9011, our local rules, and this court's inherent powers afford it an array of possible remedies and sanctions. The court, however, is satisfied that the remedial actions and safeguards outlined in the Response are appropriate to the circumstances. No sanctions are warranted or issued.

### IV. CONCLUSION

The OSC is withdrawn and dismissed. This order concludes this matter and shall be transmitted to the Arkansas Office of Professional Conduct to supplement Counsel's election to self-report; this transmission is not intended as an independent referral.

IT IS SO ORDERED.

Dated this this 3rd day of September 2025.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Whitehall Pharmacy LLC
    Charles D. Davidson, Sr.
    Deven Harvison
    Joseph A. DiPietro
    Robert Brech